**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JACQUELYN HAGEN,**<br>**Plaintiff,**<br><br>**v.**<br><br>**McCLAIN BROS. LLC, and**<br>**McCLAIN BROS. INC.,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br><br>**NO. 25-4227** |

**MEMORANDUM**

**HODGE, J.** **November 6, 2026**

# I. INTRODUCTION

This matter is before the Court on Plaintiff Jacquelyn Hagen's ("Plaintiff") request for entry of default judgment and damages. Plaintiff brought claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. C.S. § 333.101 *et seq.*, against her former employer, McLain Bros. Inc. t/a McLain Bros LLC and McLain Bros. LLC ("Defendants"), arising from Defendants' failure to pay overtime wages. Plaintiff also brought claims for hostile work environment and retaliatory discharge under Title VII of the Civil Rights Act of 1964 ("Title VII") arising from the continuous sexual harassment towards her by Defendants' Chief Financial Officer ("CFO") and other male employees of the business, which culminated in Defendants' wrongful termination of Plaintiff on the basis of her sex.

Default was entered by the Clerk of Court. (ECF No. 16.) A damages hearing was held on August 31, 2026. (ECF No. 22.) During the hearing, the Court ordered supplemental briefing and documentation as to damages, which Plaintiff filed on October 6, 2026. (ECF No. 23.) Now, upon consideration of Plaintiff's Motion for Default Judgment (ECF No. 17 (the "Motion")), taking into

consideration the totality of the circumstances established through Plaintiff's credible, sworn testimony provided in open court during the damages hearing and subsequent supplemental evidence filed with the Court (ECF No. 23), for the reasons discussed below, the Court finds Defendants jointly and severally liable to Plaintiff for damages in the total amount of **$119,297.90**. This includes: (1) $54,073.90 in unpaid overtime wages and liquidated damages; (2) $30,600 in lost wages; (3) $20,000 in noneconomic compensatory damages; (4) $13,875.00 in attorney's fees; and (5) $749.00 in costs. An appropriate Order follows.

## II. BACKGROUND

### A. Findings of Fact[1]

On April 19, 2023, Plaintiff was hired by Defendants as an office assistant with an initial salary of $45,000 per year. (ECF No. 9 ¶ 8; ECF No. 21 at 2.) Plaintiff was terminated and reinstated at various points throughout her employment with Defendants, and her tenure ultimately ended on September 6, 2024.[2] (ECF No. 9 ¶ 22.) Initially, Plaintiff's role was limited to data entry and filing, but after her third week of employment she was assigned additional duties that included data entry in the dispatch department and preparation of invoices. (ECF No. 21 at 2.) Plaintiff was also required to clean the office on weekends. (*Id.*) She was later tasked with responding to calls from customers, vendors, and governmental inspectors on job sites. (*Id.*) At some point, Plaintiff was informed that her new title was operations specialist. (*Id.*) At all times, her position involved no managerial duties and no exercise of discretion or independent judgment with respect to matters of significance. (ECF No. 9 ¶ 9.) After her third week of employment, Plaintiff routinely worked

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] In July 2023, Plaintiff was terminated and rehired within one week. (ECF No. 21 at 2.) On July 31, 2023, she was terminated and rehired two weeks later. (*Id.*) Plaintiff was again terminated on November 21, 2023 and rehired on December 4, 2023. (*Id.*)

50 to 60 hours per week. (*Id.* ¶ 9; ECF No. 21 at 2.) Yet Plaintiff never received any overtime wages. (ECF No. 9 ¶ 10.)

During her employment, Plaintiff reported to Defendants' Chief Executive Officer ("CEO") Mark McClain Jr. ("McClain") and CFO Keith Truskin ("Truskin"). (*Id.* ¶ 23.) Truskin continuously belittled, demeaned, and harassed Plaintiff. (*Id.* ¶ 25.) Truskin's behavior included requesting that Plaintiff provide personal information about her life and complaining when Plaintiff failed to do so. (*Id.*) On one occasion when Plaintiff was upset about Truskin's repeated questions and began to walk away crying, Truskin screamed: "Yeah, that's right, walk the fuck out. You know what's best for you, bitch." (*Id.*) Another time, Truskin ordered Plaintiff to "[g]et the fuck out" of his office. (*Id.*) Truskin also repeatedly made harassing comments to Plaintiff based on her gender, including:

- "I'm not attracted to women's bodies at this stage; it's the mind and your [sic] so intelligent." (*Id.* ¶ 26.)
- "You know what I really wanted to hear you say today 'I'm sorry Daddy.'" (*Id.*)
- "If you're not with your husband anymore you should not be wearing a ring on your wedding finger; don't come to work wearing your wedding band, I want you to present yourself as a single woman." (*Id.*)

After making one of these statements, Truskin became extremely upset and accused Plaintiff of recording his statements on her phone. (ECF No. 21 at 7.) Furthermore, Truskin often spoke with his office manager, in Plaintiff's presence, about personal sexual matters. (ECF No. 9 ¶ 27.) Plaintiff testified that Truskin attempted to prompt her to take part in these conversations.

In addition, Plaintiff continuously received demeaning and sexually harassing emails from male coworkers. (¶ 28.) Plaintiff was sexually assaulted by one of these coworkers. (*Id.*) When

Plaintiff complained to McClain about the harassment she experienced from Truskin and other male coworkers, those complaints were ignored. (*Id.* ¶ 29.) Instead, McClain and Defendants' management abruptly terminated Plaintiff from her position on September 6, 2024. (*Id.* ¶ 35.) Following her termination, Plaintiff struggled to find comparable employment and remained unemployed until May 2025. (ECF No. 21 at 7.) Plaintiff held various temporary jobs until July 29, 2025, when she was hired at Bristol Aluminum as an employee in the Packing Labor Department at a rate of approximately $20.55 per hour.[3] (*Id.*) Plaintiff's termination resulted in economic injury and caused her humiliation, anguish, embarrassment, and emotional and mental distress. (ECF No. 9 ¶ 36.)

**B. Procedural History and Jurisdiction**

On July 28, 2025, Plaintiff filed her initial Complaint alleging violations of the FLSA and PMWA for unpaid overtime wages. (ECF No. 1.) An affidavit of service was filed on December 16, 2025. (ECF No. 7.) Plaintiff filed an Amended Complaint on January 20, 2026, which added claims under Title VII after the Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue. (ECF No. 9.) On January 27, 2026, Plaintiff filed an affidavit confirming service of the Amended Complaint upon McClain Bros. Inc. and McClain Bros. LLC. (ECF Nos. 12, 13.) Defendants failed to respond to the Complaint or Amended Complaint. On March 3, 2026, the Clerk of Court entered default for Defendants' failure to plead or otherwise defend. (ECF No. 16.)

[3] Plaintiff's briefing states that she earns "$20.50 per week" but an annual salary of $42,744. (ECF No. 21 at 7.) The Court attributes the discrepancy to scrivener's error and corrects Plaintiff's rate to $20.55 *per hour*. (*See* ECF 21-1 (providing Plaintiff's pay stub from Bristol Aluminum, which lists her pay rate as $20.55 per hour).)

Plaintiff filed a Motion for Default Judgment on March 6, 2026. (ECF No. 17.) The Court then issued an order scheduling an assessment of damages hearing for August 31, 2026. (ECF No. 18.) On July 10, 2026, Plaintiff filed an affidavit confirming that the Court's order scheduling the damages hearing had been served on McClain. (ECF No. 19.) The Court held the damages hearing on August 31, 2026, during which Plaintiff provided testimony in support of the Motion. (ECF No. 22.) Defendants failed to attend the damages hearing or otherwise respond to the Motion.[4] After the hearing, Plaintiff filed additional evidentiary support for her damages claims and request for attorney's fees. (ECF No. 23.)

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). Venue is proper pursuant to 28 U.SC. § 1391(b)(2).

## III. LEGAL STANDARD

"When considering a motion for a default judgment, a district court must accept as true the well-pleaded factual allegations of the complaint, but it need not accept the moving party's legal conclusions or factual allegations related to the amount of damages." *Wiant v. Coppa*, No. 13-cv-1750, 2018 WL 5978097, at *1 (E.D. Pa. Nov. 14, 2018) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). When considering whether to grant default judgment, courts consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Id.* at *2 (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)).

---

4 In addition to the affidavits of service filed on the docket, the Court notes that Plaintiff's exhibits in support of her request for attorney's fees demonstrate that Defendants had notice of the lawsuit through their CEO. (*See* ECF No. 23-6 at 3 (referencing counsel's "[r]esponse to email from Mark McClain" and "[e]mail exchanges with Mark McClain" in the fall of 2025).)

In most cases, a judicial determination is necessary to decide the extent of the injury or valuation of the plaintiff's loss. *Id.* at *1 (quoting *Nationwide Prop. & Cas. Ins. Co. v. Janis*, No. 08-cv-00153, 2008 WL 2762375, at *1 (M.D. Pa. July 11, 2008)). Thus, "[i]f the damages are not for a 'sum certain or for a sum which can by computation be made certain,' the 'court may conduct such hearings or order such references as it deems necessary and proper.'" *Comdyne I*, 908 F.2d at 1149 (citation omitted) (quoting Fed. R. Civ. P. 55(b)(1)–(2)).

## IV. DISCUSSION

### A. Causes of Action

The Court must first determine whether the Amended Complaint establishes legitimate causes of action. *See Comcast Cable Commc'ns. v. Bowers*, No. 06-cv-1664, 2007 WL 1557510 (D.N.J. May 25, 2007) ("Before awarding a default judgment, the Court must determine whether the moving party's complaint establishes a legitimate cause of action."). Here, the Amended Complaint alleges violations of the FLSA, PMWA, and Title VII.

The FLSA provides that employers are required to pay overtime compensation to employees who work in excess of 40 hours per workweek. *O'Bryant v. City of Reading*, 197 F. App'x 134, 136 (3d Cir. 2006); *see also* 29 U.S.C. § 207(a)(1). Salaried employees whose duties are primarily administrative are generally exempted from the FLSA's overtime pay requirement, but that exemption does not apply where the employee's role does not involve the exercise of independent judgment and discretion. *Carter v. City of Philadelphia*, 417 F. Supp. 3d 639, 646–47 (E.D. Pa. 2019) ("Thus, in order to be categorized as an administrative employee subject to the exemption, the employee must (1) be compensated on a salary basis, (2) conduct primary duties which qualify as 'administrative,' and (3) exercise independent judgment and discretion in the performance of his/her duties.") (citing *O'Bryant*, 197 F. App'x at 137). The FLSA establishes a

right of action by aggrieved employees to hold their employers liable "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Courts assess PMWA claims under the same FLSA framework. *See Razak v. Uber Techs., Inc.*, No. 16-cv-573, 2016 WL 5874822, at *7 (E.D. Pa. Oct. 7, 2016) (citations omitted) ("Because the PMWA 'substantially parallels' the FLSA, federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA.").

Here, Plaintiff alleges that, beginning three weeks into her employment, she regularly worked 50 to 60 hours per week but was never paid overtime wages. (ECF No. 9 at ¶¶ 9–10.) While Plaintiff was a salaried employee who arguably performed administrative duties, there is no indication that her role required the exercise of independent judgment or discretion. Thus, accepting Plaintiff's factual allegations as true, Plaintiff has stated legitimate causes of action under both the FLSA and PMWA.

Plaintiff also alleges violations of Title VII for hostile work environment and retaliatory discharge. A claim for hostile work environment under Title VII requires the plaintiff to establish the following:

> 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability. The first four elements establish a hostile work environment, and the fifth element determines employer liability.

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). A claim of retaliatory discharge requires the plaintiff to demonstrate that she engaged in conduct protected by Title VII, her employer took an adverse action against her after or contemporaneous with that

protected activity, and a causal link exists between the protected conduct and the adverse employment action. *See Slagle v. Cnty. Of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006).

Plaintiff has stated a cause of action for hostile work environment under Title VII. Plaintiff alleges that she was routinely subjected to sexual harassment in the form of unwanted sexual comments made by Defendants' CFO Truskin and other male coworkers. (ECF No. 9 ¶¶ 24–28.) Additionally, during the damages hearing, Plaintiff testified that Truskin repeatedly expressed frustration when she refused to give him more information about her personal life and sexual experiences. On at least one occasion when Plaintiff did not engage in these conversations, Truskin resorted to vulgar and offensive language, yelling at Plaintiff: "Yeah, that's right, walk the fuck out. You know what's best for you, bitch." (*Id.* ¶ 25.) Plaintiff reported that she was upset by the harassment and complained to CEO McClain about it, but her complaints were ignored. (*Id.* ¶ 29.)

Plaintiff has also stated a cause of action for retaliatory discharge under Title VII. Plaintiff alleges that she was abruptly fired for the final time after again reporting sexual harassment to McClain (*Id.* ¶ 35.) But this was not the only time Plaintiff was terminated during her 18-month tenure with Defendants. During the damages hearing, Plaintiff testified that she was periodically terminated and rehired throughout her employment, and that these terminations typically coincided with particularly charged interactions with Truskin. (ECF No. 22; *see also* ECF No. 21 at 7.) As a result, Plaintiff has alleged facts sufficient to find a causal link between her complaints to McClain regarding sexual harassment and her termination.

Given the above, the Court finds that Plaintiff has stated legitimate causes of action under the FLSA, PMWA, and Title VII. The Court next applies the *Chamberlain* factors to determine whether default judgment is proper. *See Chamberlain*, 210 F.3d at 164. Here, Plaintiff would be prejudiced if default is denied because she would be deprived of the unpaid overtime wages that

she earned while working for Defendants and left without remedy for the injuries associated with the sexual harassment she suffered. Defendants have declined to present a defense despite being timely served the Complaint, Amended Complaint, and notice of the damages hearing. Finally, Defendants' failure to respond is culpable conduct, which is made more apparent to the Court by the exhibits demonstrating that McClain previously conferred with Plaintiff's counsel regarding this action. Therefore, default judgment will be granted in favor of Plaintiff on Counts I–IV and damages will be assessed accordingly.

### B. Federal and State Overtime Wage Claims

Counts I and II are claims for violation of the FLSA and PMWA overtime wage requirements. As Plaintiff conceded during the damages hearing, these claims are based on the same conduct. Plaintiff initially made a claim for $34,852.50 plus liquidated damages for unpaid overtime wages. (ECF No. 21 at 3.) However, these calculations were based on counsel's belief that Plaintiff had been receiving pay increases as promised by Defendants. (*See id.* at 2–3.) During the hearing, counsel acknowledged that Plaintiff's pay records do not reflect the same increase in salary initially reported to the Court. In supplemental briefing, Plaintiff submitted paystubs demonstrating that she was paid at hourly rates of $20.19 for one week in May 2023; $21.63 from May 28, 2023 to May 18, 2024; and $22.50 from May 19, 2024 to August 31, 2024. (ECF No. 23-1 at 2–25; ECF No. 23-2 at 2–35.) Because Plaintiff regularly worked between 50 and 60 hours per week, she calculates her unpaid overtime based on an average 55 hours worked per week. (ECF No. 21 at 3; *see also* ECF No. 23 at 2.) Based on these calculations, Plaintiff's amended damages claim includes a total of $31,501.80 in unpaid overtime wages.

The Court accepts Plaintiff's estimate of 15 hours unpaid overtime wages per week. Based on the Court's review of the paystubs submitted by Plaintiff, the Court accepts Plaintiff's assertion

that she worked one week at the standard hourly rate of $20.19. (*See* ECF No. 23 at 2.) The proper overtime rate (1.5X the standard rate) is $30.28. The Court also accepts Plaintiff's calculation of 43 weeks worked at a standard hourly rate of $21.63. (*Id.*) The proper overtime rate for those weeks is $32.45. Finally, Plaintiff worked 14 weeks at a standard rate of $22.50.[5] (*Id.*) The proper overtime rate for those weeks is $33.75. Based on the above, the Court finds the below unpaid overtime wages.

| **Time Period** | **Overtime Hours Worked** | **Overtime Rate** | **Unpaid Overtime Wages** |
|---|---|---|---|
| 5/21/2023 – 5/27/2023 | 15 | $30.28 | $454.20 |
| 5/28/2023 – 5/18/2024 | 645 | $32.45 | $20,930.25 |
| 5/19/2024 – 8/31/2024 | 210 | $33.75 | $7,087.50 |

Plaintiff's unpaid overtime wages total $28,471.95. During the damages hearing, Plaintiff testified that part of her unpaid overtime hours included time spent cleaning the office. Plaintiff has since informed the Court that some of her paystubs reflect "commission payments" for office cleaning. (*See id.* at 2.) The Court therefore deducts the $1,435 that Plaintiff received in commission payments from the total above, such that Plaintiff is not paid twice for any cleaning hours included in this calculation. Plaintiff's total unpaid overtime wages therefore stand at $27,036.95. By failing to present a defense in this matter, Defendants have failed to establish that they have acted in good faith with respect to Plaintiff's compensation. As a result, Plaintiff is entitled to liquidated damages equal to her actual damages. Accordingly, the Court awards **$54,073.90** in damages for the FLSA and PMWA claims.

[5] Plaintiff's briefing states that she worked 20 weeks at this rate, but Plaintiff has submitted paystubs for only 14 weeks. (ECF No. 23 at 2; ECF No. 23-2 at 21, 23–35.) The Court only awards damages for those weeks supported by the record evidence.

### C. Compensatory Damages

"Compensatory damages are recoverable from a covered entity that has committed intentional discrimination in violation of Title VII, such as sex harassment and constructive discharge." *EEOC v. Scott Med. Health Ctr., P.C.*, No. 16-cv-225, 2017 WL 5493975, at *4 (W.D. Pa. Nov. 16, 2017) (citing 42 U.S.C. § 1981a(a)(2)). A plaintiff may be awarded compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). To recover such damages, a plaintiff must present evidence of actual injury. *Sowell v. RAV Investigative & Sec. Servs., Ltd*, No. 15-cv-03657, 2016 WL 3014881, at *6 (E.D. Pa. May 26, 2016) (citing *Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1121 (3d Cir. 1988)). Neither medical evidence nor corroborating testimony is required to prove injury. *Rios v. Marv Loves 1*, No. 13-cv-1619, 2015 WL 5161314, at *16 (E.D. Pa. Sept. 2, 2015).

#### 1. Economic Harms

A court may award back pay to a prevailing plaintiff in a Title VII action. *Id.* at *14 (citing *Gunby*, 840 F.2d at 1119). "The standard calculation for back pay is 'to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained.'" *Id.* (quoting *McKenna v. City of Philadelphia*, 636 F. Supp. 2d 446, 456 (E.D. Pa. 2009)).

Plaintiff seeks compensatory damages for lost wages following her retaliatory discharge. (ECF No. 21 at 7.) After she was terminated, Plaintiff was unemployed until May 1, 2025. (*Id.*) Plaintiff's lost wages are therefore calculated by determining the amount that Plaintiff would have earned had she remained employed by Defendants for the 237 days between her termination (September 6, 2024) and when she obtained employment (May 1, 2025). Plaintiff calculates her

pay loss prior to May 1, 2025 as $56,250 and her pay loss for the past year as $33,000. (*Id.*) However, Plaintiff's calculations are apparently based on the higher salary figures that counsel identified as incorrect during the damages hearing.[6] (*See id.* (stating that the $56,250.00 figure was based on a calculation of "75% of $75,000," where Plaintiff had originally stated that her final salary with Defendants was $75,000).) Upon review of her paystubs, the Court notes that Plaintiff was paid at a rate of $22.50 per hour—or $900 per week—prior to her termination by Defendants. Thus, her lost wages for the relevant period total **$30,600** (34 weeks paid at a rate of $900 per week), and the Court awards damages in that amount.

### 2. Noneconomic Harms

The Amended Complaint indicates that Plaintiff seeks compensatory damages for non-economic harms (ECF No. 9 ¶¶ 32, 36), but Plaintiff has not requested a specific damages amount. The evidence supporting the claim for non-economic compensatory damages consists of Plaintiff's testimony regarding emotional damages. During the hearing, Plaintiff averred that she experienced significant stress when she was made to endure repeated sexual comments at work that went uncorrected despite her reports. While Plaintiff suggested during the hearing that she spoke with her primary care physician and a therapist following her termination, she did not offer additional evidence supporting those statements. Additionally, Plaintiff's supplemental briefing clarified that "Plaintiff did not receive any formal therapy during the course of her employment with the defendants or in the months immediately thereafter notwithstanding the effect of the harassment on her," so "Plaintiff testified to her self-therapy practices." (ECF No. 23 at 3.) The Court awards

6 The Court notes that despite counsel's recognition of the incorrect salary figures, Plaintiff's post-hearing supplemental briefing did not include corrected calculations for lost wages.

$20,000 in noneconomic compensatory damages for the emotional harms that Plaintiff suffered as a result of Defendants' conduct.

**D. Punitive Damages**

The Court declines to award punitive damages in this matter. Plaintiff requests punitive damages without stating a proposed amount. (ECF No. 9 ¶¶ 33, 37.) A Title VII plaintiff may recover punitive damages in a case of intentional discrimination where the defendant engaged in the discriminatory conduct "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kant v. Seton Hall Univ.*, 279 F. App'x 152, 158 (3d Cir. 2008) (citation modified) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). Here, the Court finds that the evidence presented in the damages hearing fails to indicate that Defendants acted with the subjective belief that they might be violating federal law. Punitive damages are therefore inappropriate in this case.

**E. Attorney's Fees**

Under FLSA and the PMWA, a prevailing plaintiff is entitled to reasonable attorney's fees and costs. *Wiant*, 2018 WL 5978097, at *4 (citing 29 U.S.C. § 216(b); 43 Pa. C. S. § 333.101 *et seq.*). The Court also has discretion to award reasonable attorney's fees to the prevailing party in an employment discrimination action. *See EEOC v. L.B. Foster Co.*, 123 F.3d 746, 750 (3d Cir. 1997) ("Prevailing plaintiffs 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"); *see also Reczek v. JHA Wilmington, Inc.*, No. 07-cv-013, 2008 WL 4723021, at *4 (D. Del. Oct. 27, 2008) (citing 42 U.S.C. § 2000e-5(k)). A plaintiff is entitled to attorney's fees where the plaintiff (1) essentially succeeds in obtaining the

relief sought on the merits and (2) the circumstances under which the plaintiff obtained that relief are casually linked to the prosecution of the Title VII complaint. *Sullivan v. Commonwealth of Pa. Dept. of Lab. and Indus.*, 663 F.2d 443, 452 (3d Cir. 1981).

The reasonableness of an award of attorney's fees is generally assessed according to the lodestar method in statutory fee-shifting cases. *See, e.g.*, *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177–78 (3d Cir. 2001). The lodestar method requires courts to calculate the reasonable number of hours expended multiplied by a reasonable hourly rate. *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007). The Third Circuit has advised that courts should exclude "excessive, redundant, or otherwise unnecessary" hours from these fee awards. *Loughner*, 260 F.3d at 178; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Here, Plaintiff has succeeded on the merits by obtaining a default judgment on her FLSA, PMWA, and Title VII claims. Plaintiff's counsel has also submitted an affidavit documenting the fees and costs associated with this action. The Court finds the hours expended and the fees and costs charged to be reasonable. Therefore, the Court awards Plaintiff attorney's fees and costs in the amount of $**13,875.00** and **$749.00** respectively.

## V. CONCLUSION

Taking into consideration the totality of the evidence provided by Plaintiff, the Court finds Defendants jointly and severally liable to Plaintiff for damages in the total amount of **$119,297.90**. This includes: (1) $54,073.90 in unpaid overtime wages and liquidated damages; (2) $30,600 in lost wages; (3) $20,000 in noneconomic compensatory damages; (4) $13,875.00 in attorney's fees; and (5) $749.00 in costs. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**